**UNITED STATES, Appellee,**

v.

**George P. REINER, Second Lieutenant, U.S. Air Force, Appellant.**

No. 41,319.

ACM 22754.

U. S. Court of Military Appeals.

Feb. 14, 1983.

For Appellant: *Colonel George R. Stevens* and *Captain Douglas H. Kohrt* (on petition).

For Appellee: *Colonel James P. Porter, Captain Richard O. Ely, II, Captain Frederick J. Sujat, Jr.,* USAFR (on petition).

*Opinion of the Court*

PER CURIAM:

Despite his pleas, appellant was convicted by a general court-martial of one specification alleging use of hashish and one alleging possession of hashish, both on diverse occasions over six and a half months, contrary to Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to a dismissal from the service and to forfeit all pay and allowances. The convening authority approved the trial results and the United States Air Force Court of Military Review affirmed.

In this Court appellant asserts that "the trial counsel committed prejudicial error by questioning the appellant concerning his pretrial decision to refuse to incriminate himself." However, upon a full reading of the pertinent portion of the cross-examination, we conclude that the thrust of that questioning may not fairly be inferred to have been comment on appellant's pretrial decision to remain silent.

To appreciate the logic behind trial counsel's cross-examination of appellant, it is necessary to set forth the text of the first several minutes of that examination so that the questions objected to may be considered in their context:

Q. It has been a long time to come to these charges, hasn't it?

A. Yes sir, it has.

Q. When were you first charged, can you remember?

A. Sir, I can't remember the exact date.

Q. What month?

A. I believe, sir, it might have been in April or so; I'm not really sure.

Q. Could it have been in February?

A. It might have been, sir.

Q. 1979?

A. Yes, sir.

Q. So you were aware, basically, of the allegations against you at that time, isn't that correct?

A. Yes, sir, I was.

Q. How about the charge relating to Captain Schultz? When did you first become aware of that?

A. Sir, I became aware of that as soon as my lawyer was informed of it, and that was not too long ago, a couple of months ago.

Q. Okay. Could that have been in August?

A. Yes, sir, it could have been.

Q. And were you informed of the specific charge against you at that time by Captain Schultz?

A. Sir, I was informed by my lawyer, yes.

Q. Okay. Did you have occasion to see statements by Captain Schultz?

A. Yes, sir. My lawyer showed me a statement that he drew up with the OSI.

Q. And relating to the other charges, you've had statements and testimony by Rapps and Vicki and Harold Perry, haven't you, to go over?

A. Sir, I haven't—the first time I ever saw any statements or testimony of Steven Rapps or the other ones is when my lawyer showed me them several days ago, particularly in pretrial.

Q. You're telling the court that the Article 32 investigation held in June that you didn't bother reading that?

A. No, sir, I read that.

Q. Okay. But do you—so that was testimony of the witnesses, right?

A. Yes, sir. I was familiar with the testimony.

Q. You were familiar with the testimony? So you've had a lot of time, haven't you, to consider what the allegations are against you and to review the testimony?

A. Yes, sir, you could say that.

Q. And you've had probably a month to review Captain Schultz' testimony, is that correct?

A. Yes, sir, you could say that too.

Q. And you were confronted by all three of these witnesses when they were sworn under oath in pretrial proceedings, isn't that correct?

A. Yes, sir.

Q. So it's safe to say and to tell this court that you, in fact, have had plenty of opportunity and much time to concern yourself with the preparation of a defense at this trial, is that true?

A. Sir, that's the job of the defense—to prepare the defense.

Q. Absolutely. Have you had that time?

A. Sir, we have had sufficient time, although I was really pushing for a speedy trial.

Q. Yeah, but you have had a lot of time to think about what you're going to say on the stand today, haven't you?

A. Sir, you could say that, yes.

Q. In fact, you've—these charges against you have been one of the primary factors in your life for the last six months or so, one of the main motivating factors of what you do, isn't that true?

A. Sir, when you're under charges, there's a lot of mental anguish and emotional strain.

Q. I'd request you just answer the question. Is that true?

A. Yes, sir.

Q. By the way, how many times have I had an opportunity to interview you before this day?

A. Sir, in an official capacity, not at all.

Q. In fact, this is the first time, isn't it, that I have ever had an opportunity or any member of the Government has ever had an opportunity to hear your presentation of what your explanation of the offenses is, isn't it?

A. Yes, sir.

When we consider these last two questions asked by trial counsel in their full context, it is quite clear to us that trial counsel was not commenting on appellant's pretrial invocation of his right to silence; instead, he simply was pointing out that while appellant fully knew long before trial what evidence the Government had against him and, therefore, could plan his testimony accordingly, the prosecution had enjoyed no similar opportunity to learn from appellant his version of the events. It is not improper for the prosecutor to reveal such factors bearing on the weight appropriately to be given appellant's testimony. *See United States v. Fitzpatrick,* 14 M.J. 394 (C.M.A. 1983). The conclusion we expressed in *Fitzpatrick* applies with equal force here:

> Undoubtedly, no one in the courtroom who was listening to the cross-examination—rather than simply being exposed to one or two questions and answers out of context—could reasonably perceive the sinister implication which appellant now finds in the questioning. Indeed, if such implications had been apparent, we have no doubt that ... [appellant's] defense counsel, who vigorously and competently asserted his rights at the trial, would have lodged a suitably specific objection.

*Id.* at 399 (footnote omitted).

Accordingly, the decision of the United States Air Force Court of Military Review is affirmed.